**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

DISTRICT OF DELAWARE

Case number *(if known)* _____    Chapter __11__

☐ Check if this an
amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/24

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

| | | |
|---|---|---|
| 1. | **Debtor's name** | J&J Southern Farms, Inc. |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names and *doing business as* names | |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 65-0980735 |

| | | |
|---|---|---|
| 4. | **Debtor's address** | **Principal place of business** |

**Principal place of business**

**1200 Research Boulevard**
**Saint Louis, MO 63132**
Number, Street, City, State & ZIP Code

**Saint Louis**
County

**Mailing address, if different from principal place of business**

P.O. Box, Number, Street, City, State & ZIP Code

**Location of principal assets, if different from principal place of business**

Number, Street, City, State & ZIP Code

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | **www.bensonhill.com** |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) |
| | | ☐ Partnership (excluding LLP) |
| | | ☐ Other. Specify: _____ |

| Debtor | **J&J Southern Farms, Inc.** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

**7.** **Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes.

___1111___

**8.** **Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply:*

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725 (amount subject to adjustment on 4/01/25 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.** **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

■ No.
☐ Yes.

| | District | _____ | When | _____ | Case number | _____ |
|---|---|---|---|---|---|---|
| | District | _____ | When | _____ | Case number | _____ |

**10.** **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No
■ Yes.

| Debtor | J&J Southern Farms, Inc. | | Case number (if known) | |
|---|---|---|---|---|
| | Name | | | |

| List all cases. If more than 1, attach a separate list | Debtor | **See Rider 1** | Relationship | |
|---|---|---|---|---|
| | District | **Delaware** | When | Case number, if known |

**11.** **Why is the case filed in this district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

■ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12.** **Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____
Contact name _____
Phone _____

---

**Statistical and administrative information**

**13.** **Debtor's estimation of available funds**

*Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14.** **Estimated number of creditors**

(on a consolidated basis)

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ■ 200-999 | | |

**15.** **Estimated Assets**

(on a consolidated basis)

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ■ $100,000,001 - $500 million | ☐ More than $50 billion |

**16.** **Estimated liabilities**

(on a consolidated basis)

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ■ $100,000,001 - $500 million | ☐ More than $50 billion |

| Debtor | **J&J Southern Farms, Inc.** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

**Request for Relief, Declaration, and Signatures**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  **March 20, 2025**
 MM / DD / YYYY

**X** **/s/ Daniel Cosgrove**                     **Daniel Cosgrove**
Signature of authorized representative of debtor      Printed name

Title  **Interim Chief Executive Officer**

**18. Signature of attorney**

**X** **/s/ Ian J. Bambrick**                     Date  **March 20, 2025**
Signature of attorney for debtor                         MM / DD / YYYY

**Ian J. Bambrick**
Printed name

**Faegre Drinker Biddle & Reath LLP**
Firm name

**222 Delaware Avenue**
**Suite 1410**
**Wilmington, DE 19801**
Number, Street, City, State & ZIP Code

Contact phone  **302-467-4200**     Email address  **ian.bambrick@faegredrinker.com**

**5455 DE**
Bar number and State

## **RIDER 1**

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a voluntary petition in the United States Bankruptcy Court for the District of Delaware for relief under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

- Benson Hill Fresh, LLC
- Benson Hill Holdings, Inc.
- Benson Hill, Inc.
- Benson Hill ND OldCo, Inc.
- Benson Hill Seeds Holding, Inc.
- Benson Hill Seeds, Inc.
- BHB Holdings, LLC
- DDB Holdings, Inc.
- J&J Southern Farms, Inc.

**OMNIBUS WRITTEN CONSENT**
**OF**
**THE BOARDS OF DIRECTORS/MANAGERS**
**OF**
**BENSON HILL FRESH, LLC**
**BENSON HILL HOLDINGS, INC.**
**BENSON HILL SEEDS HOLDING, INC.**
**BENSON HILL SEEDS, INC.**
**BHB HOLDINGS, LLC**
**BENSON HILL ND OLDCO, INC.**
**DDB HOLDINGS, INC.**
**J&J SOUTHERN FARMS, INC.**

March 19, 2025

The undersigned being the sole manager, all of the members of the board of directors, or all of the members of the board of managers, as applicable (collectively, the "***Boards***" and each, a "***Board***") of Benson Hill Fresh, LLC; Benson Hill Holdings, Inc.; Benson Hill Seeds Holdings, Inc.; Benson Hill Seeds, Inc.; BHB Holdings, LLC; Benson Hill ND OldCo, Inc.; DDB Holdings, Inc., and J&J Southern Farms, Inc. (collectively, the "***Companies***" and each, a "***Company***"), hereby take the following actions and adopt the following resolutions by unanimous written consent, pursuant to and in accordance with the applicable Company's bylaws, articles of incorporation, operating agreement, or equivalent governing documents, and the laws of the jurisdiction where such Company is organized.

**WHEREAS**, each Board has reviewed and considered the financial and operational conditions of the applicable Company and such Company's business on the date hereof, including the historical performance of the Company, the assets of the Company, the current and long-term liabilities of the Company, the market for the Company's assets, and credit market conditions.

**WHEREAS**, each Board has surveyed potential restructuring options for the applicable Company and has considered presentations by management, as well as financial and legal advisors to the Companies (such advisors, in such applicable capacities, collectively, the "***Advisors***"), regarding the assets, liabilities and liquidity of the Company, the strategic alternatives available to the Company and the impact of the foregoing on the Company's business, prospects, and enterprise value.

**WHEREAS**, the Companies have negotiated the proposed *DIP Facility Commitment Term Sheet* by and among the lender(s) (the "***DIP Lender(s)***") set forth therein and each of the Companies, as borrowers (with such changes, additions, deletions, amendments, or other modifications thereto as any Authorized Person (as defined below) may in their reasonable business judgment approve, in the form attached hereto as **Exhibit I** (the "***DIP Term Sheet***")) to provide a first-priority debtor in possession credit facility (the "***DIP Facility***") to fund the Companies' operations and the administration of the Chapter 11 Cases (as defined below), and to pay the claims of certain vendors, employees, and other stakeholders in the ordinary course of business during the Chapter 11 Cases.

**WHEREAS**, each Board has been advised of and is familiar with the material terms of the proposed DIP Term Sheet.

**WHEREAS**, the DIP Term Sheet requires each Company to commence a sale process to sell all or substantially all of its assets pursuant to Section 363 of the Bankruptcy Code in accordance with bidding procedures approved by the Bankruptcy Court, and to grant the DIP Lender(s) a right of first refusal to serve as the stalking horse bidder in connection with such transaction.

**WHEREAS**, each Company will obtain substantial benefits from the DIP Facility and each of the Boards deem it advisable and in the best interests of the applicable Company to enter into the DIP Term Sheet and to negotiate and enter into such other and further definitive loan documentation as contemplated thereby as any Authorized Person of the Companies may deem necessary or appropriate to evidence the transactions contemplated by the DIP Term Sheet (collectively, the "***DIP Financing Documents***") and to perform their obligations thereunder.

**WHEREAS**, each Board has been briefed on the proposed voluntary bankruptcy petition to be filed by the applicable Company, and has received, reviewed, and considered the recommendations of, and the materials presented by, the management and Advisors of the Companies regarding the relative risks and benefits of pursuing a bankruptcy proceeding under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***").

**WHEREAS**, each Board has determined that it is in the best interest of the applicable Company to, in light of the planned terminations of employment of the officers set forth on **Exhibit II** hereto (to the extent applicable as to each Company, the "***Terminated Officers***") and resignations of certain of their directors or managers, to appoint Daniel Cosgrove as the interim Chief Executive Officer, General Counsel, and Secretary of each Company and to elect and appoint Mr. Cosgrove as a director or manager, as applicable, of the Companies where the sole director or manager is expect to resign.

**NOW, THEREFORE, BE IT:**

I.      <u>**Chapter 11 Filing**</u>

**RESOLVED**, that in the business judgment of each Board, it is desirable and in the best interest of the applicable Company, and its stakeholders, creditors, and other parties in interest, that such Company file (or cause to be filed), on March 20, 2025, a voluntary petition (a "***Petition***") for relief under the provisions of chapter 11 of the United States Code, commencing a case (each, a "***Chapter 11 Case***" and, collectively, the "***Chapter 11 Cases***") in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***"), and any other petition for relief or recognition or other order that may be desirable under applicable laws in the United States.

**RESOLVED**, that each officer, director, and manager of the applicable Company (collectively, the "***Authorized Persons***") be, and hereby is, authorized, empowered, and directed, for and on behalf of such Company, to (i) execute and file the Petition, and any affidavits, declarations, first day motions, schedules, statements of financial affairs, lists and other motions, applications, pleadings, papers, or documents; (ii) take and perform any and all action that they

2

deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operations of such Company or any of its subsidiaries; (iii) appear as necessary at all bankruptcy proceedings on behalf of such Company; and (iv) pay all such expenses where necessary or appropriate in order to carry out fully the intent, and accomplish the purposes of, the resolutions adopted herein.

**RESOLVED**, that the actions of any Authorized Person taken pursuant to the preceding resolution, including the execution, acknowledgment, delivery, and verification of the applicable Petition and all ancillary documents and all other agreements, petitions, certificates, instruments, guaranties, notices, and other documents, shall be conclusive evidence of such Authorized Person's approval and the necessity or desirability of such action.

**RESOLVED**, that all acts lawfully done or actions lawfully taken by any Authorized Person to seek relief on behalf of the applicable Company under chapter 11 of the Bankruptcy Code, or in connection with the ordinary course operations of such Company during the Chapter 11 Cases, or any matter related thereto, in connection with such Company's ordinary course operations be, and hereby are, adopted, ratified, confirmed and approved in all respects as the acts and deeds of the Company as fully as if such actions had been presented to the Board for its prior approval.

**RESOLVED**, that all acts and deeds previously performed by any of the Authorized Persons before the adoption of the foregoing recitals and resolutions that are within the authority conferred by the foregoing recitals and resolutions, are hereby ratified, confirmed, and approved in all respects as the authorized acts and deeds of the applicable Company.

## II.       <u>Retention of Professionals</u>

**RESOLVED**, that the Authorized Persons of each Company be, and hereby are, authorized, empowered, and directed to employ on behalf of each Company: (i) the law firm Faegre Drinker Biddle & Reath LLP as bankruptcy counsel; (ii) Piper Sandler as investment banker; (iii) Meru, LLC as financial advisor; (iv) Stretto, Inc. as claims and noticing agent; and (v) any other legal counsel, accountants, financial advisors, restructuring advisors, or other professionals the Authorized Persons deem necessary, appropriate, or advisable; each to represent and assist each Company in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses); and in connection therewith, the Authorized Persons of each Company be, and hereby are, authorized, empowered and directed, in accordance with the terms and conditions hereof, to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services.

**RESOLVED**, that the Authorized Persons of each Company be, and hereby are, authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and to perform such further actions and execute such further documentation that the Authorized Persons in their reasonable business judgment deem necessary, appropriate, or desirable in accordance with these resolutions.

### III.       <u>Debtor-in-Possession Financing</u>

**RESOLVED**, that the transactions contemplated by the DIP Term Sheet, including, without limitation, the borrowings thereunder, the liabilities, obligations, and security interests and liens granted in connection therewith, be, and hereby are, authorized, adopted, and approved on such terms substantially consistent with those presented to the applicable Board, including as modified or amended by the other DIP Financing Documents or otherwise with the approval of any one or more of the Authorized Persons.

**RESOLVED**, that, in the judgment of each Board, it is desirable and in the best interests of the applicable Company, and its stakeholders, creditors, and other parties in interest, to finalize, execute, and deliver the DIP Financing Documents, subject to appropriate modifications and final negotiations, and to cause such Company to perform its obligations thereunder.

**RESOLVED**, that the applicable Company's execution and delivery of, and the performance of its obligations under, the DIP Financing Documents are hereby authorized and approved; each Authorized Person of the applicable Company, acting alone or with one or more Authorized Persons, is hereby authorized, empowered, and directed to negotiate the terms of, execute and deliver, and to cause such Company to perform their obligations under the DIP Financing Documents, and any and all other documents, certificates, instruments, and agreements, with such changes therein and modifications and amendments thereto, as any of the Authorized Persons may in their reasonable business judgment approve, which approval shall be conclusively evidenced by their execution thereof.

**RESOLVED**, that the Authorized Persons of the applicable Company be, and hereby are, authorized and directed, in the name of and on behalf of such Company, to seek authorization to enter into the DIP Financing Documents pursuant to interim and final orders (the "***DIP Orders***") of the Bankruptcy Court; and the forms, terms, and provisions of the DIP Orders to which such Company is or will be subject, and the actions and transactions contemplated thereby, are hereby authorized, adopted, and approved, and the Authorized Persons be, and hereby are, authorized and empowered, in the name of and on behalf of the Company, to negotiate, or cause to be prepared and negotiated, and to take such actions necessary to deliver, perform, and cause the performance of, each DIP Order and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or documents relating to the transactions contemplated thereby to which such Company is or will be a party.

**RESOLVED**, that the form, terms, and provisions of the DIP Term Sheet, and the grant of the security interest in and liens on the collateral described in the DIP Term Sheet, be and hereby are, authorized, adopted, and approved; and the Authorized Persons of the applicable Company are hereby authorized, empowered, and directed, in the name of and on behalf of such Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, each of the transactions contemplated by the DIP Financing Documents and such other agreements, certificates, instruments, or other papers or documents to which such Company is or will be a party or any order entered into in connection with the DIP Financing Documents, incur and pay or cause to be paid all related fees and expenses, with such changes, additions and modifications thereto as an Authorized Person executing the same shall approve.

4

**RESOLVED**, that the applicable Company, as debtor and debtor in possession under the Bankruptcy Code, be, and hereby is, authorized, empowered, and directed to incur any and all obligations and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Term Sheet, including granting liens on its assets to secure such obligations.

**RESOLVED**, that the Authorized Persons of the applicable Company be, and hereby are, authorized, directed, and empowered, in the name of and on behalf of such Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of each of the transactions contemplated by the DIP Term Sheet, and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or required documents to which the Company is or will be party or any order entered into in connection with the Chapter 11 Cases, and to incur and pay or cause to be paid all related fees and expenses, with such changes, additions, and modifications thereto as an Authorized Person executing the same shall approve.

## IV.   Sale Process

**RESOLVED**, that each Company is authorized to commence a sale process to sell all or substantially all of the Company's assets (collectively, the "***Assets***") pursuant to Section 363 of the Bankruptcy Code (the "***Sale Transaction***").

**RESOLVED**, that the Authorized Persons of the Companies be, and hereby are, authorized and empowered to negotiate the terms of an asset purchase agreement with the DIP Lender(s), or such other third party, to serve as the stalking horse bidder (the "***Stalking Horse Bidder***" and "***Stalking Horse APA***," respectively) in connection with the Sale Transaction, including the terms of a motion and proposed order to approve (i) an auction process that will govern the marketing and sale of the Assets through certain bidding procedures to the Stalking Horse Bidder or such other bidder with the highest or otherwise best offer (the "***Bidding Procedures***"), and (ii) as applicable, bid protections in favor of the Stalking Horse Bidder ("***Bid Protections***"), which Stalking Horse APA, Bidding Procedures, and Bid Protections shall be subject to approval by the Boards.

## V.   Appointment of Officers and Directors

**RESOLVED**, that each Board hereby approves the terminations of employment and hereby removes the Terminated Officers, and immediately upon the terminations of employment and removals of the Terminated Officers, hereby elects and appoints Daniel Cosgrove as the interim Chief Executive Officer, General Counsel, and Secretary of the Company.

**RESOLVED**, that the applicable sole member or sole shareholder, acting by and through the Board of the sole member or sole shareholder, as applicable, of the applicable Company hereby, immediately following the election and appointment of Mr. Cosgrove as the interim Chief Executive Officer of the applicable Company, elects and appoints Mr. Cosgrove as the sole director or sole manager, as applicable, of the Company and accept the resignation of the existing directors or managers, as applicable, of the applicable Company.

## VI.    <u>Waiver of Notice Requirements</u>

**RESOLVED**, that each director and manager of the Companies hereby waives any and all notice requirements that may have applied under the applicable Company's bylaws, articles of incorporation, operating agreement, or equivalent governing documents in connection with any meeting of the applicable Board that occurred prior to the date hereof, and each director and manager hereby ratifies, confirms, and approves all actions, resolutions, and decisions taken at any such meetings as if proper notice has been given.

[*Signature Pages Follow*]

   **IN WITNESS WHEREOF**, the undersigned as the sole director or, as applicable, sole manager of Benson Hill Fresh, LLC; Benson Hill Holdings, Inc.; Benson Hill Seeds Holdings, Inc.; Benson Hill Seeds, Inc.; BHB Holdings, LLC; Benson Hill ND OldCo, Inc.; DDB Holdings, Inc., and J&J Southern Farms, Inc. has executed this Omnibus Written Consent as of the date first set forth above.

Signed by:

*Adrienne (Deanie) Elsner*

8550469570BB49A...

Adrienne "Deanie" Elsner

## Exhibit I

*DIP Term Sheet*
[Attached]

**Execution Copy**

## DIP FACILITY COMMITMENT TERM SHEET

### March 19, 2025

This term sheet (the "DIP Term Sheet") describes the principal terms and conditions of a debtor-in-possession loan (the "DIP Facility") to be made available to Benson Hill, Inc. and its affiliated entities (collectively, the "Company" or "Debtors") as a secured first-priority debtor in possession financing. The DIP Facility would be used for (i) costs and fees related to a sale process and transaction under section 363 ("Section 363 Transaction") of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and (ii) the Company's going-concern operating costs through consummation of the Section 363 Transaction. This DIP Term Sheet shall be binding upon (i) due execution by the parties hereto and (ii), as to the interim DIP Facility funding amount, entry of an order by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") approving the terms of the DIP Facility on an interim basis, with the DIP Term Sheet to be annexed thereto as an exhibit (the "Interim DIP Order"), and (iii), as to the final DIP Facility funding amount, entry of an order by the Bankruptcy Court approving the DIP Facility on a final basis, with the DIP Term Sheet annexed thereto as an exhibit (the "Final DIP Order" and, together with the Interim DIP Order, the "DIP Orders"), each in form and substance reasonably acceptable to the DIP Lenders set forth below.

The DIP Lenders set forth below are prepared to provide a commitment to the Debtors for a DIP Facility subject to the terms and conditions described below.

DMS_US.370019415.21

| DIP Lenders | • S2G Investments, LLC ("S2G");<br>• Expedition Ag Holdings, LLC ("Expedition");<br>• Steve Kahn ("Kahn"); and<br>• ProAgInvest, LLC ("ProAgInvest" and, collectively, the "DIP Lenders") |
|---|---|
| **Borrower** | The Debtors in their capacity as "debtors in possession" in chapter 11 proceedings. The Debtors shall be jointly and severally liable for their obligations under the DIP Facility. |
| **Facility** | An $11 million secured term loan facility (the "Total Commitment") secured by a first-priority lien on all of the assets of the Debtors' chapter 11 estates pursuant to section 364(c) or (d) (as applicable) Bankruptcy Code, which shall be provided by the DIP Lenders in up to the following amounts, subject to customary draw request conditions:<br><br>• S2G:  $2.5 million<br>• Expedition:  $7.5 million<br>• Kahn:  $500,000<br>• ProAgInvest: $500,000<br><br>The obligations of the DIP Lenders to advance funds are several and not joint and several. |
| **Transaction Structure** | A sale process and transaction under section 363 the Bankruptcy Code ("Section 363 Transaction"). |
| **Credit Bidding** | DIP Lenders shall have the right to "credit bid" the DIP Facility in the Section 363 Transaction. |
| **Right of First Refusal** | Lenders will be granted the right of first refusal to act as a stalking horse bidder for the purchase of substantially all of the Company's assets through the Section 363 Transaction (the "Stalking Horse"). |
| **Inter-DIP Lender Agreement** | • Upon the approval by the Bankruptcy Court of the sale of the Company's assets to the DIP Lenders via credit bid and closing of the Section 363 Transaction (the "Closing"), then the DIP Lenders shall convert their respective portion of the DIP Facility, except for the Optional Cash Out described below, into a proportionate equity of a new entity to be vested with the acquired assets of the Company ("NewCo").<br>• Each of the DIP Lenders may exercise an option to cash out and not convert their portion of the DIP Facility into equity in NewCo up to an aggregate of $4 million (the "Optional Cash Out").  In the event that more than $4 million of DIP Lenders in the DIP Facility elects the Optional Cash Out, the Optional Cash Out will be paid out pro rata to the DIP Lenders exercising the Optional Cash Out with the remaining portions of the DIP Facility to be converted into equity in NewCo.<br>• DIP Lenders whose portion of the DIP Facility is converted into equity of NewCo shall be provided with equity in a proportion equal to twice the amount of the DIP Facility contribution.<br>• In an Event of Default (as defined herein), no DIP Lender may foreclose upon the Collateral unless 75% (based on amounts individually lent by the DIP Lenders and currently outstanding) of the DIP Lenders consent to such foreclosure.<br>• Other than in a foreclosure and extension of the maturity of the DIP Facility, actions requiring the approval of the DIP Lenders shall require consent from a |

Page **2** of 10

|  |  |
|---|---|
|  | majority of the DIP Lenders (based on amounts individually lent by the DIP Lenders and currently outstanding).<br>• Expedition shall be entitled to appoint two directors to the board of directors of NewCo.<br>• Kim Hurst will be the CEO of NewCo and have a board of director's seat.<br>• NewCo's board shall consist of five directors. |
| **Funding** | The DIP Facility shall be made available to the Debtors as a debtor-in-possession multiple draw loan facility, as follows:<br><br>• Subject to the entry by the Bankruptcy Court of the Interim DIP Order approving the DIP Facility on an interim basis, in form and substance acceptable to the DIP Lenders, and satisfaction by the Debtors of the conditions precedent set forth in the "Conditions Precedent to Initial Funding" section below, the DIP Lenders shall make $3 million immediately available to the Debtors on an interim basis (the "Initial Funding").<br>• Upon the entry of the Final DIP Order in form and substance reasonably satisfactory to the DIP Lenders in their sole discretion, the DIP Lenders shall make available to the Debtors the remainder of the Total Commitment, subject to the terms of the Final DIP Order, the Approved Budget (defined below), and further documentation of the DIP Facility. |
| **Use of Proceeds & Draws** | Subject to the above, weekly draws up to the amounts set forth in the Approved Budget. |
| **Interest** | 15.0% per annum, paid in kind.  If an Event of Default occurs and is continuing the interest rate shall be 20% per annum. |
| **Chapter 11 Milestones** | The Company shall meet the following milestones (collectively, the "Chapter 11 Milestones"), which dates may be extended with the consent of the DIP Lenders:<br><br>Chapter 11 Petitions Filed:  March 20, 2025 (the "Petition Date").<br><br>Motion to Reject EDGE Lease:  Petition Date.<br><br>First Day Hearing:  Petition Date plus 4 business days.<br><br>Interim Approval of DIP Facility:  Petition Date plus 5 business days.<br><br>Final Approval of DIP Facility:  Petition Date plus 30 days.<br><br>Bid/Sale Procedures Motion Hearing:  Petition Date plus 24 days.<br><br>Bid Procedures Order:  Petition Date plus 25 days.<br><br>Order Rejecting EDGE Lease:  Petition Date plus 30 days.<br><br>Bid Deadline:  Petition Date plus 58 days.<br><br>Auction Date:  Petition Date plus 60 days.<br><br>Final Sale Approval:  Petition Date plus 68 days.<br><br>Transaction Consummation:  Petition Date plus 75 days. |
| **Lenders Fees and Expenses** | DIP Lenders' reasonable fees and expenses, including attorney fees (the "Lender Fees"), *provided that* the DIP Lenders shall provide the Debtors 2 business days prior to the Bid Deadline with a report of fees incurred through the Bid Deadline. |

|  | In the event that the Bankruptcy Court enters an order approving the Section 363 Transaction to an entity or entities other than the DIP Lenders or their designee (an "Alternative Transaction"), the Lender Fees shall be payable from cash proceeds upon the closing of such Alternative Transaction. |
|---|---|
| **Approved Budget** | The initial 12-week cashflow budget substantially in the form attached hereto as <u>Exhibit A</u>, which has been approved by the DIP Lenders, (the "Approved Budget") and thereafter:<br><br>• Company to provide a weekly "actual to budget" reconciliation ("Weekly Variance Report"), which shall reflect weekly expenditures that are not more than 10% over budget for any line item nor more than 15% over budget in the aggregate;<br>• Every 4 weeks thereafter, provide an updated cashflow projection of the next 13-weeks, on a rolling basis, which shall be subject to approval of the DIP Lenders and which approval, after an opportunity for discussion with Company, shall not be unreasonably withheld; and<br>• Upon approval by the DIP Lenders, the revised cashflow projections for the following 13-week period shall be replaced in its entirety and shall be the Approved Budget thereafter. |
| **Conditions Precedent to Initial Funding** | Conditions precedent to the Initial Funding of the DIP Facility shall include:<br><br>• Filing of chapter 11 petitions for the Debtors (the "Chapter 11 Cases"),<br>• Approval by the Bankruptcy Court of the Interim DIP Order approving the DIP Facility in form and substance reasonably acceptable to the DIP Lenders, and<br>• Execution of this DIP Term Sheet; *provided that* the obligation to provide additional funding beyond the Initial Funding will require execution of definitive loan documentation (the "Loan Documents") and Final DIP Order acceptable to each DIP Lender. |
| **Optional Prepayments and Commitment Reductions:** | There shall be no early repayment or prepayment of the DIP Facility prior to the Maturity Date, nor any voluntary reductions of the Total Commitment. |

| | |
|---|---|
| **Stalking Horse Requirements** | To the extent that the DIP Lenders do not elect to act as the Stalking Horse, the Company shall not be foreclosed from accepting another Stalking Horse bid and the DIP Lenders shall have the continued right to credit bid the DIP Facility in any auction.  To be acceptable, any Stalking Horse bid must provide a reasonable offer representing the highest and best bid received by the Company at the time the Stalking Horse bid is provided, which bid shall be subject to the approval of the Bankruptcy Court in any bid procedures approved by the Bankruptcy Court and shall include funding for repayment of the DIP Facility and allowed closing costs. |
| **Affirmative Covenants** | During the time that any obligations are outstanding under the DIP Facility, the Company shall:<br><br>• Financial Reports:  Provide weekly financial reporting required by the Approved Budget procedures and such other financial reports and information as reasonably requested by the DIP Lenders relating to the assets, liabilities, and financial condition of the Company and participate in weekly calls as requested by the DIP Lenders.<br>• Pleadings – deliver to the Lender(s) all material pleadings, motions, applications, judicial or financial information, and other documents when filed by or on behalf of the Debtor[s] with the Bankruptcy Court; provided that any such pleadings that are (a) requests for relief under sections 363 or 365 of the Bankruptcy Code or (b) directly related to the DIP Facility, bidding procedures, or any plan of reorganization or plan of liquidation, or any disclosure statement related thereto, shall be delivered no less than two (2) business days in advance of the filing thereof to the extent reasonably practicable. |
| **Negative Covenants** | Unless and until the DIP Facility is fully paid and terminated, Company shall not:<br><br>• Make payments or distributions outside of the Approved Budget without the DIP Lenders' consent;<br>• Support or file a reorganization plan or transaction not approved by the DIP Lenders (note that the proposed auction process will invite other bids); and<br>• Enter into material contracts without the DIP Lenders' consent. |
| **Carve-Out:** | The relative priority of all amounts owed under the DIP Facility will be subject only to a carve-out for the following (collectively, the "Carve Out"):<br><br>(i) the costs and administrative expenses permitted to be incurred by any Chapter 7 trustee under Section 726(b) of the Bankruptcy Code pursuant to an order of the Bankruptcy Court following any conversion of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code in an amount not to exceed US$25,000;<br><br>(ii) up to the amounts set forth in the respective Budget line items, to the extent allowed by the Bankruptcy Court, for all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") or by any official committee appointed in the Chapter 11 Cases (a "Committee") (the "Committee Professionals" and, together with the Debtor Professionals, the "Professionals") at any time on or before one business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice;<br><br>(iii) Allowed Professional Fees of the Debtor Professionals in an aggregate amount not to exceed $200,000 and Allowed Professional Fees of the Committee |

**Execution Copy**

| | |
|---|---|
| | Professionals in an aggregate amount not to exceed $25,000 incurred after delivery by the DIP Lenders of a Carve-Out Trigger Notice, to the extent allowed by the Bankruptcy Court (the amounts set forth in this clause (iii) being, collectively, the "Post Carve-Out Trigger Notice Cap"); and<br><br>(iv) the payment of fees pursuant to 28 U.S.C. § 1930.<br><br>For purposes of this DIP Term Sheet, "Carve-Out Trigger Notice" shall mean a written notice delivered by email by the DIP Lenders to counsel to the Debtors, the U.S. Trustee, and counsel to any Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined herein), stating that the Post Carve-Out Trigger Notice Cap has been invoked.<br><br>Nothing herein shall be construed as impairing the ability of any party to object to any fees and expenses of a professional in the Chapter 11 Cases. |
| **Professional Fee Escrow:** | Prior to the delivery of a Carve-Out Trigger Notice, the Debtors shall wire transfer funds, on a weekly basis, to an escrow account established for the benefit of the Professionals (to the extent of such funds actually deposited, the "Professional Fee Escrow") in the amount equal to, but not to exceed, the professional fees and costs set forth in the Budget for the Professionals for each such week.  From such funds held in the Professional Fee Escrow, the escrow agent shall release to the Professionals such amounts as are payable pursuant to an applicable order of the Bankruptcy Court, including an order approving interim compensation procedures in the chapter 11 cases and any order granting interim or final fee applications for Professionals (each, a "Fee Order"). Funds held in the Professional Fee Escrow shall be applied to Allowed Professional Fees that have been incurred following the Petition Date in accordance with the procedures established in the chapter 11 cases (the "Interim Fee Procedures"). Payments and reimbursements made to a Professional prior to delivery of the Carve-Out Trigger Notice shall reduce the amounts available to such Professional under section (ii) of the Carve-Out, and neither the Professional Fee Escrow nor payments therefrom shall in any way increase the Carve-Out. All amounts payable to Professionals pursuant to an order of the Bankruptcy Court shall be paid first from funds remaining in the Professional Fee Escrow, if any, and, upon exhaustion thereof, from the Carve-Out as such fees are payable pursuant to the Interim Fee Procedures. For the avoidance of doubt the DIP Liens, shall attach to any excess funds in the Professional Fee Escrow after satisfaction of the Carve-Out in respect of Allowed Professional Fees, and such funds shall be used to satisfy outstanding DIP Facility amounts. |

| | |
|---|---|
| **Events of Default** | (a) Failure of Security Interest:  If any lien created under the Interim DIP Order or the Final DIP Order, as applicable, or any other security document shall cease to be, or shall be asserted by any Debtor not to be, a valid and perfected lien, with the priority required by the applicable security document, Interim DIP Order, or Final DIP Order; or if any other lien or interest is provided "superpriority" status without consent of the DIP Lenders; |
| | (b) Dismissal of Cases; Appointment of Trustee:  The Chapter 11 Cases shall be dismissed or converted to cases under Chapter 7 of the Bankruptcy Code or if the Company files a motion or other pleading seeking the dismissal of the Chapter 11 Cases or appointment of a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code that is not dismissed or overruled within 30 days, unless otherwise with consent of the DIP Lenders; |
| | (c) Final DIP Order:  The Final DIP Order shall not have been entered by the Bankruptcy Court within 45 days after the entry of the Interim DIP Order, or such later date as the DIP Lenders may agree; |
| | (d) Sale Motion: Absent the consent of the DIP Lenders, the Debtor withdraws the Sale Motion and/or proposes an alternative restructuring transaction, chapter 11 plan, or other transaction other than a sale of substantially all assets pursuant to the Sale Motion; |
| | (e) Chapter 11 Milestones:  The Company fails to meet the Chapter 11 Milestones, as defined above by the times specified below and the DIP Lenders do not consent to an extension thereof; |
| | (f) Compliance with Approved Budget: the Debtors' noncompliance with the Approved Budget which is not curable or, solely if curable, not cured within 2 business days; |
| | (g) Relief from Stay: the granting of relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed against any assets of the Debtors in excess of $100,000, in the aggregate; |
| | (h) Additional Liens: the filing of a motion by the Debtors, without written consent of the DIP Lenders, to incur debt secured by a lien with priority equal to, or superior to, the DIP Liens, which is given superpriority administrative expense status under section 364(c) of the Bankruptcy Code, unless such motion provides for the proceeds of such debt to be used for the indefeasible payment in full in cash of the DIP Facility and any and all other amounts due to the DIP Lenders; and |
| | (i) other customary Events of Default to be set forth in the definitive Loan Documents. |

**Execution Copy**

| | |
|---|---|
| **Remedies** | Upon the occurrence and continuance of an Event of Default beyond the applicable grace period set forth below, DIP Lenders shall be entitled to take all or any of the following actions without further order of or application to the Bankruptcy Court, subject to the Inter-DIP Lender Agreement, as set forth in this DIP Term Sheet: |
| | (i)   declare the principal of and accrued interest on the outstanding DIP Loans to be immediately due and payable; |
| | (ii)   terminate the DIP Facility; |
| | (iii)   implement the default rate of interest on all outstanding DIP Loans; and |
| | (iv)   take any other action or exercise any other right or remedy (including, without limitation, with respect to the liens in favor of DIP Lenders) permitted under the applicable loan documents, or by applicable law. |
| | Any automatic stay otherwise applicable to DIP Lenders shall be modified so that upon the occurrence of an Event of Default and upon five (5) business days' prior written notice of such occurrence (a "Termination Notice"), in each case given to Debtors, counsel to the Committee appointed in these proceedings (if any), and the U.S. Trustee, DIP Lenders shall be entitled to exercise customary remedies including, without limitation, the right to realize on all Collateral and the right to exercise any remedy available under applicable law, in each case without obtaining any further relief or order of the Bankruptcy Court unless, within such five (5) business day period, the Bankruptcy Court has entered an order to the contrary. Consistent with the foregoing sentence, relief from the stay under section 362 of the Bankruptcy Code in favor of DIP Lenders shall be embodied in any order approving the DIP Facility and the use of cash collateral. |
| | The Debtors and the Committee (if any), and any other party in interest shall be entitled to an emergency hearing before this Court within five (5) calendar days after the Termination Notice is sent by the DIP Lender to the Debtors, the U.S. Trustee, and counsel to the Committee (if any) (such 5-calendar-day period, the "Default Notice Period"). If an emergency hearing is requested to be heard prior to the expiration of the Default Notice Period, then the Default Notice Period shall automatically be extended until the Bankruptcy Court hears and rules with respect thereto." |

| | |
|---|---|
| **Maturity**<br><br>**Payment or Conversion** | The DIP Facility will mature, terminate, and be fully payable in full upon the earliest to occur of (i) the consummation of a Transaction pursuant to the DIP Lenders or otherwise; (ii) the substantial consummation of a plan of reorganization filed in the Chapter 11 Cases that is confirmed pursuant to an order of the Bankruptcy Court; (iii) 180 days following the first draw, unless otherwise extended by agreement of the Company and 75% (based on amounts individually lent by the DIP Lenders and currently outstanding) of the DIP Lenders; or (iv) upon acceleration of the DIP Facility following an Event of Default.<br><br>At the *option of the DIP Lenders* and with the approval of the Bankruptcy Court, the obligations to the DIP Lenders under the DIP Facility may be repaid through:<br><br>- Cash upon the closing of an Alternative Transaction or<br>- Applied as a "credit bid" in a sale/auction process for all or substantially all of the assets of the Company approved by the DIP Lenders.<br><br>In the event of multiple bids for the Debtors' assets, and the DIP Lenders are not the winners of the auction, then all DIP Lenders shall be paid in full upon closing and no portion of the DIP Facility shall be converted to equity. |
| **Collateral / Security** | The obligations will be secured by first-lien security interest in the DIP Collateral, subject only to (i) the Carve Out and (ii) reasonable and customary permitted liens and encumbrances approved by the DIP Lenders.<br><br>"DIP Collateral" shall include all assets (whether tangible, intangible, personal or mixed) of the Debtors, whether now owned or hereafter acquired and wherever located, before or after the Petition Date, including, without limitation, all accounts, proceeds of leases, inventory, equipment, deposit and other accounts, money, equity interests or capital stock in subsidiaries, investment property, instruments, chattel paper, contracts, patents, copyrights, trademarks and other general intangibles, commercial litigation claims, commercial tort claims, farm products, deposit accounts, documents, the proceeds of all claims or causes of action, and all rents, products, offspring, profits, supporting obligations, and proceeds of any and all of the foregoing, and subject to the entry of the Final DIP Order, all claims or causes of action of the Debtors arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law avoidance actions under chapter 5 of the Bankruptcy Code). |
| **Confidentiality** | Subject to the commencement of the Chapter 11 Cases, this Term Sheet and any discussions related hereto are strictly confidential. |

*[Signature Page Follows]*

**Exhibit A**

**Approved Budget**

PRIVILEGED AND CONFIDENTIAL

# Initial DIP Budget

## Budget based on 75-day Chapter 11 process

| ($M) | Wk 1 3/21 | Wk 2 3/28 | Wk 3 4/4 | Wk 4 4/11 | Wk 5 4/18 | Wk 6 4/25 | Wk 7 5/2 | Wk 8 5/9 | Wk 9 5/16 | Wk 10 5/23 | Wk 11 5/30 | Wk 12 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (+) Seeds Contr. Margin | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | ($0.10) | ($0.10) | ($0.10) | ($0.10) | ($0.10) | ($0.10) | ($0.10) | ($0.13) |
| (+) Grains Contr. Margin | — | — | — | — | — | — | — | — | — | — | — | — | — |
| **Total Cash Receipts** | **$0.12** | **$0.12** | **$0.12** | **$0.12** | **$0.12** | **($0.10)** | **($0.10)** | **($0.10)** | **($0.10)** | **($0.10)** | **($0.10)** | **($0.10)** | **($0.13)** |
| (-) Operating Disbursements [1] | (1.69) | 0.77 | (0.90) | (0.45) | (0.37) | (0.40) | (0.90) | (0.45) | (0.37) | (0.37) | (0.38) | (0.98) | (6.50) |
| **Operating Cash Flow** | **($1.57)** | **$0.88** | **($0.79)** | **($0.33)** | **($0.26)** | **($0.50)** | **($1.00)** | **($0.55)** | **($0.47)** | **($0.47)** | **($0.48)** | **($1.08)** | **($6.62)** |
| (+/-) Other Non-Operating Disb. | 0.35 | 0.65 | 0.04 | — | 0.04 | — | 0.04 | — | 4.00 | — | — | — | 1.12 |
| (+) DIP Proceeds | 3.00 | — | — | — | 4.00 | — | — | — | 4.00 | — | — | — | 11.00 |
| **Net Cash Flow** | **$1.78** | **$1.53** | **($0.75)** | **($0.33)** | **$3.78** | **($0.50)** | **($0.96)** | **($0.55)** | **$3.53** | **($0.47)** | **($0.48)** | **($1.08)** | **$5.50** |
| (-) BK Counsel – Debtor [2] | (0.04) | (0.18) | (0.18) | (0.18) | (0.18) | (0.14) | (0.13) | (0.13) | (0.17) | (0.18) | (0.15) | (0.09) | (1.75) |
| (-) Financial Advisor - Debtor | (0.05) | (0.05) | (0.05) | (0.05) | (0.05) | (0.05) | (0.05) | (0.05) | (0.05) | (0.05) | (0.05) | (0.05) | (0.55) |
| (-) Claims Agent Fees | (0.01) | (0.01) | (0.01) | (0.01) | (0.01) | (0.01) | (0.01) | (0.01) | (0.01) | (0.01) | (0.01) | (0.01) | (0.13) |
| (-) Investment Banker [3] | (0.03) | (0.03) | (0.03) | (0.03) | (0.03) | (0.03) | (0.03) | (0.03) | (0.03) | (0.03) | (0.03) | (0.03) | (0.30) |
| (-) Utilities Adequate Assurance | (0.10) | — | — | — | — | — | — | — | — | — | — | — | (0.10) |
| (-) US Trustee Fees | — | — | — | — | — | — | (0.07) | — | — | — | — | (0.07) | (0.14) |
| (-) Critical Vendor Payments | (1.80) | — | — | — | — | — | — | — | — | — | — | — | (1.80) |
| (-) KEIP / KERP Payment [4] | — | — | — | — | (0.71) | — | — | — | — | — | — | — | (0.71) |
| (-) Committee Professional Fees | — | — | — | — | — | — | (0.18) | — | — | — | — | (0.18) | (0.35) |
| **Net Cash Flow (incl. Ch.11 Fees)** | **($0.24)** | **$1.27** | **($1.01)** | **($0.60)** | **$2.81** | **($0.72)** | **($1.42)** | **($0.76)** | **$3.28** | **($0.73)** | **($0.71)** | **($1.50)** | **($0.33)** |
| Beginning Cash [1] | $2.42 | $2.17 | $3.45 | $2.44 | $1.84 | $4.65 | $3.93 | $2.51 | $1.75 | $5.03 | $4.30 | $3.58 | $2.42 |
| (+) Net Cash Flow | (0.24) | 1.27 | (1.01) | (0.60) | 2.81 | (0.72) | (1.42) | (0.76) | 3.28 | (0.73) | (0.71) | (1.50) | (0.33) |
| **Ending Cash** | **$2.17** | **$3.45** | **$2.44** | **$1.84** | **$4.65** | **$3.93** | **$2.51** | **$1.75** | **$5.03** | **$4.30** | **$3.58** | **$2.09** | **$2.09** |

*Target filing date of 3/20*

*Target emergence date week of 6/6*

Note: Wind-down budget is TBD and to be discussed as part of DIP Agreement negotiations
1) Subject to further refinement based on latest actuals
2) To the extent a debtor professional is underbudget, any such excess shall be available to address the fees and expenses of any other debtor professional whose fees and expenses exceed the amounts set forth herein
3) For the avoidance of doubt, the allowed closing costs are not captured in the DIP budget
4) To be revised to align with finalized schedule of KEIP / KERP payments

**Exhibit II**

Adrienne "Deanie" Elsner
Susan Keefe
Jason Bull

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| J&J Southern Farms, Inc., | Case No. 25-_____ (___) |
| Debtor. | |

## CORPORATE OWNERSHIP STATEMENT

1.     Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the above-captioned debtor (the "Debtor") hereby certifies as follows.

2.     Based on the books and records of the Debtor, no corporation owns 10% or more of the stock of Benson Hill, Inc.

3.     Benson Hill, Inc. owns 100% of the equity interests of Benson Hill Holdings, Inc.

4.     Benson Hill Holdings, Inc. owns 100% of the equity interests of BHB Holdings, LLC; DDB Holdings, Inc.; Benson Hill Seeds Holding, Inc.; and Benson Hill Fresh, LLC.

5.     Benson Hill Fresh, LLC owns 100% of the equity interests in J&J Southern Farms, Inc.

**Fill in this information to identify the case:**

Debtor name    Benson Hill, Inc., *et al.*

United States Bankruptcy Court for the: _____ District of Delaware
(State)

Case number (If known): _____

☐ Check if this is an amended filing

## Official Form 204

# Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | **AMERICAN NATURAL PROCESSORS INC** 600 STEVENS PORT DRIVE SUITE 101 NORTH SIOUX CITY, SD 57049 | T: (605) 242-6074 debj@americannatural.us | Trade Vendor | | | | $1,897,477.51 |
| 2 | **HSREP VIII HOLDING LLC** 444 W LAKE ST. SUITE 2100 CHICAGO, IL 60606 | CHRISTOPHER MERRILL, CEO T: (314) 727-9300 cmerrill@harrisonst.com | Rent | | | | $604,582.70 |
| 3 | **BAIRD SEED FARMS** 1122 KNOX HIGHWAY 18 WILLIAMSFIELD, IL 61489 | eprintcenter@hp8.us | Grower/Grain | | | | $426,004.76 |
| 4 | **BROWN RUDNICK LLP** ONE FINANCIAL CENTER BOSTON, MA 02111 | kyu@brownrudnick.com | Legal Services | | | | $398,253.72 |
| 5 | **1200 RESEARCH OWNER, LLC** 6 COUNTRYSIDE LANE ST. LOUIS, MO 63131 | FELIX WILLIAMS fwilliams@lagomaj.com | Rent | | | | $350,666.67 |
| 6 | **COLLECTOR OF REVENUE, ST. LOUIS COUNTY** 41 S CENTRAL AVE SAINT LOUIS, MO 63105 | | Taxes/Government Fees | | | | $236,286.89 |
| 7 | **L7 INFORMATICS, INC.** 83333 DOUGLAS AVENUE, STE 1600 DALLAS, TX 75225 | accounting@l7informatics.com | Trade Vendor | | | | $200,000.00 |

Debtor:  Benson Hill, Inc., *et al.*                                        Case number (if known): _____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 8 | **INSIGHT DIRECT USA, INC.** PO BOX 731069 DALLAS, TX 75373 | T:  (514) 373-8003 ach@insight.com; dikla.elmalich@insight.com | Trade Vendor | | | | **$193,995.91** |
| 9 | **PERDUE AGRIBUSINESS LLC** PO BOX 536478 PITTSBURG, PA 15253 | T:  (410) 341-2966 perdueagribusiness.ap@perdue.com | Trade Vendor | | | | **$192,838.00** |
| 10 | **VEDDER PRICE P. C.** 222 N LASALLE ST CHICAGO, IL 60601 | T:  (312) 609-7560 jsigale@vedderprice.com | Legal Services | | | | **$170,815.65** |
| 11 | **ANAPLAN,INC.** 50 HAWTHORNE ST SAN FRANCISCO, CA 94105 | T:  (952) 607-1306 ar.amer@anaplan.com | Software/License | | | | **$148,476.04** |
| 12 | **WOMBLE BOND DICKINSON** PO BOX 601879 CHARLOTTE, NC 28260-1879 | accountsreceivable@wbd-us.com | Legal Services | | | | **$147,985.81** |
| 13 | **WINTERSTEIGER, INC** 4705 AMELIA EARHART DRIVE SALT LAKE CITY, UT 84116 | sean.soyer@wintersteiger.com | Trade Vendor | | | | **$97,410.40** |
| 14 | **YERKS SEED INC.** 20202 NOTESTINE ROAD WOODBURN, IN 46797 | T:  (260) 657-5127 dryerks@gmail.com | Grower/Grain | | | | **$86,486.31** |
| 15 | **REMINGTON SEEDS** P.O. BOX 9 REMINGTON, IN 47977 | T:  (219) 261-3444 michael.luck@remingtonseeds.com | Grower/Grain | | | | **$81,282.00** |
| 16 | **TERRACE HILL FARMS INC.** APRIL MONEN TERRACE HILL FARMS INC INWOOD, IA 51240 | T:  (605) 254-3588 april@moglerfarms.com | Grower/Grain | | | | **$81,218.70** |
| 17 | **FOLEY HOAG LLP** ACCOUNTS RECIEVABLE, MAIL CODE 11192 PO BOX 70280 PHILADELPHIA, PA 19176-0280 | T:  (617) 832-1000 ebilling@foleyhoag.com | Legal Services | | | | **$73,996.50** |

Debtor:  Benson Hill, Inc., *et al.*                                                        Case number (if known): _____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim: If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 18 | **S&P GLOBAL LIMITED** MARKIT GROUP LIMITED ROPEMAKER PLACE, 4TH FLOOR LONDON, EC2Y9LY UNITED KINGDOM | | Financial Services | | | | **$72,500.00** |
| 19 | **DAVID LOCKE** 51396 BIG CREEK LANE HANNIBAL, MO 63401 | T:  (573) 248-5785 lockefarms00@gmail.com | Grower/Grain | | | | **$61,135.52** |
| 20 | **RIVER VALLEY AG EXCHANGE** 26 E HAYNIE ST. MARSHALL, MO 65340 | T:  (660) 631-1007 ddavis@rivervalleyagexchange.com | Grower/Grain | | | | **$54,174.34** |
| 21 | **AMEREN MISSOURI** P.O. BOX 88068 CHICAGO, IL 60680-1068 | T:  (877) 426-3736 mybusinessamerenmissouri@ameren.com | Utilities | | | | **$53,635.06** |
| 22 | **UNIVERSITY OF MISSOURI - COLUMBIA AR** P.O. BOX 807012 KANSAS CITY, MO 64180-7012 | | Trade Vendor | | | | **$43,750.00** |
| 23 | **GADELLNET CONSULTING SERVICES, LLC** 1520 S. VANDEVENTER AVENUE ST. LOUIS, MO 63110 | billing@gadellnet.com | Trade Vendor | | | | **$41,285.47** |
| 24 | **KROLL LLC F/K/A DUFF & PHELPS LLC** 55 E. 52ND STREET, 17TH FLOOR NEW YORK, NY 10055 | david.scott@duffandphelps.com | Trade Vendor | | | | **$40,000.00** |
| 25 | **3RD MILLENIUM GENETICS CORP** PO BOX 818 SANTA ISABEL, PR 00757 | dianne@3mgpr.com | Supplies | | | | **$39,000.00** |
| 26 | **S&G SEEDS LLC** 2230 EAST COUNTY ROAD 300 NORTH GREENSBURG, IN 47240 | info@sgcompanygroup.com | Grower/Grain | | | | **$38,510.68** |
| 27 | **EIWA INC.** 112 CAPITOL TRAIL NEWARK, DE 19711 | T:  (314) 308-8546 chirsch@eiwa.ag | Trade Vendor | | | | **$26,343.10** |
| 28 | **ATC SCIENTIFIC LLC** 312 HEMLOCK NORTH LITTLE ROCK, AR 72114 | T:  (501) 771-4255 sschuldt@atcscientific.com | Trade Vendor | | | | **$25,970.00** |

Debtor:  Benson Hill, Inc., *et al.*                    Case number (if known): _____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 29 | **ENTERPRISE FLEET MANAGEMENT** P.O. BOX 800089 KANSAS CITY, MO 64180-0089 | T:  (314) 889-8436 katheryn.e.folkes@efleets.com | Trade Vendor | | | | **$25,695.75** |
| 30 | **SUNIP LLC** 555 E CITY AVE SUITE 940 BALA CYNWYD, PA 19004 | T:  (215) 392-2550 accounting@sunip.com | Trade Vendor | | | | **$22,570.00** |

**Fill in this information to identify the case:**

Debtor name  **J&J Southern Farms, Inc.**

United States Bankruptcy Court for the:  DISTRICT OF DELAWARE

Case number (if known) _____

☐ Check if this is an
amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors  12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐  *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐  *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐  *Schedule H: Codebtors* (Official Form 206H)
☐  *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐  Amended *Schedule*
■  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
■  Other document that requires a declaration    **Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  **March 20, 2025**          X **/s/ Daniel Cosgrove**
                                              Signature of individual signing on behalf of debtor

                                              **Daniel Cosgrove**
                                              Printed name

                                              **Interim Chief Executive Officer**
                                              Position or relationship to debtor